MELISSA HOLYOAK, United States Attorney (#9832)
TODD C. BOUTON, Assistant United States Attorney (#17800)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682; todd.bouton@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KELZIE RYANN LUNA and GEORGE SANCHEZ-JUAREZ<br><br>Defendants. | Case No. 2:26-cr-00158 DBP<br><br>UNITED STATES' POSITION WITH RESPECT TO SENTENCING FACTORS AS TO DEFENDANTS<br><br>Magistrate Judge Dustin B. Pead |

*"Obstructing or otherwise interfering with an ICE arrest is a crime, and anyone involved may be subject to prosecution under federal law. In addition, encouraging others to interfere or attempt to obstruct an arrest is extremely reckless and places all parties in jeopardy."*[1]

## 1. INTRODUCTION

This case is about two ICE protestors gone wild. A male-female couple brazenly helped a handcuffed, suspected-illegal-immigrant man evade arrest by federal agents (ICE) at a local Home Depot parking lot by (1) spiriting him away in their Volkswagen Golf while he was handcuffed and a border patrol officer chased after him; (2) purchasing bolt cutters and cutting off his handcuffs; and (3) posting about it online as they cursed ICE and trumpeted their "heroism."

Ms. Luna is the female half of the charged partners in crime. Mr. Sanchez, the male half.

[1] *Misinformation concerning ICE operations generates unnecessary fear in local community* at https://www.ice.gov/news/releases/misinformation-concerning-ice-operations-generates-unnecessary-fear-local-community-0 (last visited October 16, 2026).

Both defendants have accepted responsibility for their shared crime. The defendants have each agreed to serve 4 days in jail or 2 weekends in jail, to each pay a $600 fine and $28 in joint and several restitution (to pay for the handcuffs they destroyed), and to each serve 6 months of supervised release after they get out of jail. The United States supports this sentence.

## 2. FACTUAL BACKGROUND

### 2.1 On October 8, 2025, Border Patrol agents appeared at a local Home Depot to arrest some suspected previously deported illegal aliens.

On October 8, 2025, several federal law enforcement officers from United States Customs and Border Protection (CBP), Border Patrol, and the Office of Field Operations attempted a targeted enforcement action. The location was a parking lot in a local Home Depot in Salt Lake City.[2] Before going to the Home Depot, the officers had identified four previously deported aliens whom they expected to be in the parking lot next to the store. The officers went to the parking lot to find and arrest the aliens. The officers intended to then place the aliens in removal proceedings.

### 2.2 As federal agents were arresting one of the suspects, the suspect fled across the street, and the defendants spirited him away in their car.

After arriving at the scene, federal agents identified one of their targets in a group of men standing in the parking lot. The agents then converged on the group. As the agents approached the men, about two or three of the men fled. A Border Patrol Agent ordered an unidentified male (Subject 1) not to leave. But the man attempted to flee. The agent later stated that Subject 1 looked like one of the four targets they believed to be previously deported aliens.

Subject 1 continued to attempt to flee until the same Border Patrol Agent handcuffed him and placed him in the center-rear seat of his vehicle. The agent then turned to assist an officer to

[2] This Home Depot is located at 328 West, 2100 South in Salt Lake City, Utah.

place another detained subject (Subject 2) in the seat next to Subject 1. Subject 2 resisted the other officer's attempt and went to the ground to avoid being put in the vehicle. This drew the Border Patrol Agent's attention to Subject 2.

While the Border Patrol Agent turned to Subject 2, Subject 1 escaped from the car. Still handcuffed, with his hands behind his back, Subject 1 fled south into the 2100 S westbound travel lanes at a busy intersection by the parking lot, and then east along the sidewalk. A female officer followed Subject 1 as he fled but she had to wait for traffic to subside before she could safely cross the street after him. As she approached Subject 1, she saw him get into a white Volkswagen Golf which had stopped near the light on the northeast corner of 2100 South and 300 West in the westbound lanes. The white Volkswagen then sped away to the west on 2100 South.

Subject 1's escape from lawful arrest and his flight in the white Volkswagen were captured by surveillance cameras in the area and by bystanders. And video of the escape was posted on social media. Some misguided people digitally applauded his escape and evasion.

Defendants Luna and Sanchez were the ones driving and riding in the white Volkswagen that helped Subject 1 to escape from his lawful arrest.

### 2.3 After the defendants helped the handcuffed suspect escape, they bragged about doing so online and posted a video of cutting off his handcuffs.

After Subject 1 escaped from federal agents in Defendants' car, someone sent a video of his escape and flight to "SLCScoop." SLCScoop is an Instagram page which serves as a crowd-sourced feed for police activity and event announcements. SLCScoop posted the video and titled it "ICE RAID AT HOME DEPOT SALT LAKE CITY" (ICE Raid Video).

In addition to footage of Subject 1's escape, the ICE Raid Video included footage of someone using bolt cutters to cut the chain portion of a pair of handcuffs attached to a man

matching the clothing description of Subject 1. He had on what looked to be the same maroon jacket. SLCScoop also reposted the following statement made by the Instagram profile designated "[redacted]_kelzie":

> "The guy in the video has papers of residence and they did not care. **Me and my man picked him up as he was running because we knew him** from when [*sic*] we used to work and we brought him to safety and made sure he was okay. They hit him and threw him at the car. He has a gash on his arm and a black eye. They are taking people for just looking the part. Please everybody, be careful. They will use lethal force."

(cleaned up some; emphasis added).[3]

This same "[redacted]_kelzie" Instagram profile was found to belong to the Defendant Kelzie Ryann Luna. This was confirmed based on the pictures posted in Luna's stories, the pictures on her Facebook page, the listing of "[redacted]_kelzie" and Luna's birthdate on her Facebook page, and based on Luna's driver license records and picture.

Luna also reposted the original SLCScoop video with a caption stating, tellingly, *"Fuck ice viva Mexico [4* praying *hands emojis]."* (Ex. 1) (Italics added). Local records checks further show that Luna previously worked at the McDonald's restaurant that shares a parking lot with the same Home Depot where Subject 1 escaped from federal agents. This is consistent with her statement that she knew Subject 1 from where she used to work.

/ / /

/ / /

/ / /

/ / /

---

[3] The United States disputes that Subject 1 had documentation suggesting he was legally in the United States. The United States also disputes Ms. Luna's suggestions that ICE was randomly rounding up anyone who "looked" like an illegal alien and that ICE assaulted the man. ICE denies that. Nor did ICE harm the man as Luna suggests.




**2.4 Luna also made several other incriminating admissions on her Instagram account that show the defendants' guilt.**

With a state court search warrant, an HSI Special Agent obtained additional posts from Luna's Instagram account which implicate her and her codefendant boyfriend, George Sanchez, in the alleged crime. These posts reveal the following:

/ / /

/ / /

**First:** They establish that Luna admits the two of them helped the man escape.

**Voice Message: unified_message_xx0688**

- Luna lists a timeline and information regarding her involvement, her location, and details later confirmed by investigators through CCTV footage.
- Luna states, "*the guy that they picked up that we took*, he had uh papers, he showed us he has residency[,] so they weren't even checking bro[.]" (emphasis added).

**Voice message: unified_message_xx9982**

- "We literally went to George's mom's house."
- Discussion about immigration's authority for detention.

**Second:** In the next message Luna confesses that "we," meaning she and Sanchez, took the man to a friend's house and cut off his handcuffs with bolt cutters.[4] She also suggests they understood there would likely be consequences for their actions which might include jail time.

**Voice message: unified_message_xx4160**

LUNA: No its just the one and me and George we were driving down the road of the 21st by the McDonald's we were at the Chevron actually and **he came and he came to the window where I was at dijo "ayuda me ayuda me por favor" [in Spanish this translates to "he said 'help me help me please'"] and we said get the fuck in and then we took him and we took him to his friends house and we went and bought bolt cutters first though and we cut that shit off of him** but now I have people on there calling me by my full name like ready to get me arrested I said, its okay, fuck it, I told George I said I hope you mom will take my kids.

**SANCHEZ: I'll bail you out**

---

[4] There is also video footage of someone cutting off the bolt cutters.

**LUNA: He said he's gonna bail me out, you gonna help bail me out girl? Nah I'm just kidding.**

**SANCHEZ: We don't care at this point you know**

**LUNA: We don't really care we're just chillin' livin' life….** Two of them are not but they got a lot of them the guy he told us they got at least 10 people and two of them escaped.

. . .

SANCHEZ: he was telling us he's one of our friends too and we don't leave friends behind.

LUNA: he was one of the ones who would always come in he was not an asshole he was one of the nice ones.

(bold added); (*see also* Ex. 1).

**Third:** Luna indicates that they were driving Sachez's car when they helped the suspected illegal alien escape and that the government likely had Sanchez's license plate.

**Thread (xx5316)**

- [redacted]: Hey girl you should take out the part where you helped!! I was looking at the racist comments on the video and there were a couple people that wanted to find who helped him!!

  LUNA: I know I had to delete my comment somebody came at me using my government name **but honestly I think George might be in more danger cause they have his license plates.**

  (bold added).

/ / /

/ / /







**2.5 HSI identified Sanchez as the driver and owner of the getaway car—and thus as one of the people who cut off the Government handcuffs.**

Homeland Security Investigations Salt Lake City (HSI-SLC) eventually identified Sanchez as the driver and owner of the Volkswagen Golf used to help the suspected illegal alien escape from arrest. Sanchez was the registered owner of a white Volkswagen Golf bearing the Utah license plate identified on the getaway car. They also verified his identity through other means.

Luna also posted a story on her Instagram with her wearing an EZPawn nametag. An HSI Agent checked EZPawn stores in the area and located the same Volkswagen Golf in the parking lot of a local EZPawn store. The same agent also verified that the rear window decals matched the ones visible in the trailer camera from the initial escape event. The same agent also observed Luna inside the EZPawn store. The agent checked the parking lot on multiple other occasions and located the vehicle in the parking lot as well.

Along with the videos, the surveillance, and the other posts, this evidence allowed law enforcement to conclude with confidence that Luna and Sanchez were the ones who drove the white Volkswagen getaway car and who cut off the handcuffs that federal law enforcement agents placed on the suspected illegal alien.

**2.6 By spiriting away the handcuffed alien, Luna and Sanchez stole government property (the handcuffs) and then converted and destroyed government property when they cut off the handcuffs with bolt cutters.**

The handcuffs on the suspected illegal alien were government property. They belonged to HSI—a federal agency—and were issued to the officer who handcuffed the suspected illegal alien. When Luna and Sanchez spirited the suspected alien away in their getaway car, with those handcuffs on him, they stole those handcuffs (and the alien). And when they bought bolt cutters and cut off the HSI handcuffs, they converted and destroyed government property.

**2.7 Defendants have agreed to plead guilty to one count of Theft, Disposal, and Conversion of Government Property, and Aiding and Abetting in violation of 18 U.S.C. §§ 641 and 2, to serve some jail time, and to pay a fine.**

In accepting responsibility for their crimes, Defendants have agreed to plead guilty to the sole count of Theft, Disposal, and Conversion of Government Property, and Aiding and Abetting charged in the misdemeanor information. (Plea Agreements ⁋⁋ 12, 11, 12.a.; Dkt. 1 [Misdemeanor Information] ⁋⁋ 1-2). In their plea agreements, defendants will admit that they helped cut off the handcuffs so that the handcuffed man could continue to evade law enforcement, knowing that doing so would deprive federal law enforcement officers of the ability to use the handcuffs to help them apprehend him. They will also admit that they knew they did not have authority or the government's authorization to cut the handcuffs off the handcuffed man. (*Id.* ⁋ 11).

Pursuant to Rule 11(c)(l)(C) of the Federal Rules of Criminal Procedure, Defendants will also each agree to the following sentence: 4 days or 2 weekends in jail (each), a $600 fine (each), $28 in joint and several restitution, and 6 months of supervised release (each). (Plea Agreements ⁋⁋ 12.b. and 12.g.). The United States believes that the sentence is appropriate.

## 3. GUIDELINE CALCULATION BY THE UNITED STATES

The United States calculates the defendant's sentencing guidelines as follows:

***Count 1: 18 U.S.C. § 641 (Theft, Conversion, and Destruction of Government Property)***

| | | |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level<br>18 U.S.C. § 641 (< 20-yr. maximum) | + 6 |
| § 2B1.1(b)(1)(A)) | Loss amount < $6,500 ($28)<br>Adjusted Offense Level | + 0<br>6 |
| §§ 4A1.1, 4C1.1(a)(10) | Zero-Point Offender (N/A) | - 2 |
| § 3E1.1(a) | Acceptance of Responsibility | - 2 |
| **Total Offense Level:** | | **+ 2** |

- **Criminal History:** Category I
- **Guideline Range based on Criminal History and Total Offense Level:** <u>0-6 Months</u>
- **11(c)(1)(C) Plea Agreement:** 2 weekends or 4 days in jail.

**4. THE PARTIES' AGREED-UPON SENTENCE IS REASONABLE**

Under a Fed. R. Crim. P. 11(c)(1)(C) agreement, the parties have agreed that the Court should sentence each defendant to 4 days or 2 weekends in jail, a $600 fine (each), $28 in joint and several restitution (to cover the cost of the handcuffs), and 6 months of supervised release. This is within their guideline sentencing range of 0-6 months' imprisonment. This agreed-upon sentence accounts for Defendants' sentencing guidelines and the relevant sentencing factors.

The parties' agreed-upon sentence is reasonable and supported by the Section 3553(a) factors. Section 3553(a) provides that "[t]he court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph [(a)](2). . . ." 18 U.S.C. § 3553(a) (emphasis added). These purposes include the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(2)(A)-(D).

In imposing a sentence, the court should consider these overriding purposes in weighing all the factors to be considered under Section 3553(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the aforementioned overriding purposes; (3) the kinds of sentences available; (4) the kinds of

sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a)(1)-(7).

Carefully considered, these factors support the agreed-upon sentence.

**4.1 The nature and circumstances of the offense and the history and characteristics of the defendants justify the agreed-upon sentence.**

This case is about much more than just destroying a $28 pair of handcuffs. This case is about interfering with an ICE arrest as a form of political protest. It is about spiriting away a handcuffed suspect in a getaway car in the middle of an arrest and then publicly cutting off his handcuffs to make a statement about immigration policy. It is about not just taking, but breaking, the law in your own hands. Because you feel entitled to do so. And because you don't like ICE. And then declaring "Fuck ICE. Viva Mexico." to declare allegiance to a foreign nation as you curse American men and women of law enforcement working to keep your community safe.

The property damage in this case is minimal—just $28. But the nature and overall circumstances of the offense justifies some jail time. Defendants interfered with a lawful arrest of a suspected illegal alien. They helped a handcuffed suspect escape. They knew he was fleeing from law enforcement. But because they apparently have personal issues with ICE or immigration policy, they invited a fleeing, handcuffed suspect to jump in their car. Then they sped off as a law enforcement officer ran toward them to apprehend him. They obtained bolt cutters and cut the handcuffs off the suspect. Then they bragged about their crime online.

/ / /

Four days in jail would not be the longest sentence ever imposed. But it would be actual jail time. This crime merits more than just a probation sentence, a public scolding, or some finger wagging. Defendants and the general public need to understand that if they interfere with lawful ICE arrests, they will go to jail. No matter how sincere, personal political beliefs are no defense.

The United States recognizes there are some mitigating circumstances in this case. Defendants are young. They have no prior criminal history. They are employed. They also have young twin children. They also appear to be accepting responsibility for what they did. Under the circumstances a modest jail sentence of only 4 days (or 2 weekends) seems appropriate. It would be sufficient to satisfy the purposes of sentencing without being greater than necessary.

Coupled with a modest fine of $600 each and 6 months of supervised release, the United States believes this sentence strikes a just balance between the competing interests of sentencing.

**4.2. The agreed-upon sentence would further the purposes of § 3553(a).**

The purposes of sentencing under Section 3553(a) also support the agreed-upon sentence. 18 U.S.C. §§ 3553(a)(2)(A)-(D). A 4-day prison sentence, with a 6-month term of supervised release, and full restitution, is sufficient, without being excessive. The sentence would reflect the seriousness of the offense—destroying government property by cutting off a suspect's handcuffs after spiriting him away to interfere with a lawful arrest of a suspected illegal alien who escaped with Defendants' help. It would also promote respect for the law and provide just punishment for Defendants' offense, without punishing them more than necessary. 18 U.S.C. § 3553(a)(2)(A).

Although the monetary damage was slight, Defendants' crime is serious enough to merit some modest jail time. 18 U.S.C. § 3553(a)(2)(A). Defendants have no criminal history. But they engaged in a serious crime by interfering with an ongoing arrest. Whatever their personal political

beliefs, people cannot and should not interfere with lawful arrests. There are times and places and ways to protest peacefully. Helping a handcuffed suspect flee from ICE in your car as a sworn law enforcement officer chases after him across a busy intersection is not one of them.

Sentencing Defendants to 4 days of imprisonment would also promote respect for the law and deter other criminal conduct. 18 U.S.C. §§ 3553(a)(2)(A) and (B). The public should understand and expect that—whatever their political beliefs—if they interfere with a lawful ICE arrest, they will go to jail. They should leave it to the political arena to hash out political differences. They should not take, and must be deterred from taking, the law into their own hands and breaking it, just because they happen to disagree with it. That is not the American way.

Here, a 4-day jail sentence would provide adequate deterrence and promote respect for the law. The United States submits that probation would be insufficient.

Likewise, a 4-day prison sentence would provide "just punishment" for Defendants without being excessive. 18 U.S.C. § 3553(a)(2)(A). They would go to jail. Not for a long time. But long enough to suffer the consequences of their criminal behavior. They will also have a federal misdemeanor conviction. That will follow them and remind them of proper boundaries.

A 4-day jail sentence, with 6 months of supervised release, would also protect the public from further crimes. The United States believes that half of one-year of supervised release will allow Defendants' probation officers to ensure that Defendants are back on the straight and narrow and that they will choose more appropriate ways to express their political beliefs. This six-month term should also allow them enough time to pay their restitution. 18 U.S.C. § 3553(a)(2)(C). They could simply pay $100 per month. This ought to be manageable. Jail time should also protect

/ / /

the public by causing others who might otherwise try to interfere with lawful ICE arrests to think twice before doing so. This would make everyone safer—whatever their politics.

As for treatment, the United States believes that 6 months of supervised release may also help Defendants to receive any vocational training or other treatment they might need. 18 U.S.C. § 3553(a)(2)(D). The United States does not believe that they need to serve more jail time.

For these reasons, the United States believes that the purposes of sentencing support a 4-day jail sentence with six months of supervised release. The fine and restitution are appropriate.

### 4.3. The agreed-upon four-day jail sentence would be consistent with the kinds of sentences available under the Guidelines.

The kinds of sentences available under the Guidelines for Defendants' offense are consistent with the agreed-upon sentence. 18 U.S.C. § 3553(a)(3). Defendants' guideline sentencing range is 0-6 months of imprisonment. (*Supra* § 3). Although a probation sentence may often be appropriate for a defendant in this sentencing range, some imprisonment may also be appropriate. Here, a modest term of 4 days in jail is consistent with the Guidelines.

Defendants' offense conduct also supports the other aspects of the proposed sentence—6 months of supervised release, $28 of restitution, and a $600 fine each. Defendants' offense supports a term of supervised release of up to one year.[5] Restitution is mandatory for her offense.[6]

/ / /

/ / /

---

[5] Because the loss amount for this offense is under $1,000, Section 641 imposes a maximum sentence of 1 year in prison. 18 U.S.C. § 641. That makes this offense a Class A misdemeanor. 18 U.S.C. § 3559(a)(6) (an offense with a maximum sentence of one year or less but more than 6 months is a Class A misdemeanor). A Class A misdemeanor supports up to one year of supervised release. 18 U.S.C. § 3583(b)(3).

[6] Restitution is mandatory for a conviction under 18 U.S.C. § 641. 18 U.S.C. §§ 3663A(a)(1) and (c)(1).

Therefore, the agreed-upon sentence comports with the sentences available under the Guidelines and, taking into consideration any mitigating circumstances, would impose a reasonable term of imprisonment (4 days in jail) within the Guidelines of 0-6 months in prison.

**4.4. Under the circumstances, a 4-day jail sentence is within the guideline sentencing range for Defendants' crime and would be reasonable.**

As noted above, the guideline sentencing range for Defendants' criminal offense (Theft, Disposal, and Conversion of Government Property and Aiding and Abetting) is 0 to 6 months' imprisonment. The parties agreed-upon sentence is only 4 days of imprisonment. This agreed-upon sentence is near the bottom of Defendants' guideline sentencing range. It is almost as close to probation as one can get while still necessarily requiring the parties to serve some time in jail. This calibrated sentence accounts for Defendants' personal mitigating circumstances without ignoring the other relevant sentencing factors and the need for some jail time.

**4.5. There are no pertinent policy statements that apply to Defendants' situation.**

The United States believes that there are no pertinent policy statements under the Sentencing Guidelines that apply to Defendants' situation. 18 U.S.C. § 3553(a)(5).

**4.6. A 4-day jail sentence, with a $600 per-defendant fine, joint and several restitution, and 6 months of supervised release would not result in any unwarranted sentencing disparities among similarly situated defendants.**

The need to avoid *unwarranted* sentencing disparities among similarly situated defendants is not implicated in this case. 18 U.S.C. § 3553(a)(6). These defendants are virtually in a league of their own. Thankfully this is not a common crime. In Utah at least, anti-ICE protestors are generally not crossing this same red line to interfere with lawful arrests of illegal aliens in handcuffs and then spiriting them away in getaway cars and cutting them free. So, there is not

much to compare this case to.[7] That said, if the illegal alien had been captured or Defendants had been stopped and the United States had been able to verify the suspect's status, Defendants could have been charged with a more serious crime, such as Illegally Concealing, Harboring, or Transporting an Illegal Alien. 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(iii). Those crimes are felonies. 8 U.S.C. § 1324(a)(1)(B). In such a case, with slightly different facts, a defendant would reasonably face a stiffer sentence. But here, given the facts and the suspect's escape before his status could be verified, the agreed-upon sentence of 4-days in jail is appropriate. This sentence thus would not create any unwarranted sentencing disparity among similarly situated defendants.

**4.7. The agreed-upon sentence would impose full restitution for the cost of the handcuffs that the Defendants cut off of the suspect they spirited away.**

Pursuant to the plea agreements, the parties have agreed that the Defendants will pay full restitution of $28 to cover the cost of the handcuffs they cut off the suspect's hands after they helped him escape from ICE. (Plea Agreements ⁋⁋ 12.b., 12.g.). This will be joint and several. Defendants should be able to pay this modest amount of restitution relatively quickly. Therefore, the plea agreements ensure the victim will receive full restitution. 18 U.S.C. § 3553(a)(7).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[7] The United States recognizes that in considering whether a sentencing disparity is unwarranted, the Court should consider how similarly situated defendants are being sentenced across the nation. *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir. 2008). But the United States is not aware of other such cases nationally either.

**5. CONCLUSION**

This case is not about the money. It is about destroying government property while interfering with ICE's lawful attempt to arrest a handcuffed, suspected illegal alien. Defendants should rightly serve some jail time. Four days in jail is not too high a price to pay for their crime. The Court should approve the parties' agreed-upon sentence and send them to jail for four days.

DATED this 19th day of October, 2026.

MELISSA HOLYOAK
United States Attorney

*/s/ Todd C. Bouton*
TODD C. BOUTON
Assistant United States Attorney